Todd D. Weiler, #7671
Zachary C. Myers, #15302
CHRISTENSEN & JENSEN, P.C.
257 East 200 South, Suite 1100
Salt Lake City, Utah  84111
Telephone: (801) 323-5000
Facsimile: (801) 355-3472
todd.weiler@chrisjen.com
zachary.myers@chrisjen.com
*Attorneys for Defendants*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF UTAH, NORTHERN DIVISION

| | |
|---|---|
| SMHG PHASE I LLC, a Delaware Limited Liability Company,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL EISENBERG, NOURIEL ROUBINI, and DAVID SHUSTERMAN,<br><br>Defendants. | MOTION FOR SUMMARY JUDGMENT (TOTAL OR PARTIAL)<br><br><br>Civil No. 1:22-cv-00035<br><br>Judge David Barlow<br>Magistrate Judge Jared C. Bennett |

## **MOTION**

Pursuant to Federal Rule of Civil Procedure 56, Defendants Michael Eisenberg, Nouriel Roubini, and David Shusterman, (hereinafter "Defendants"), by and through their counsel, hereby request that the court enter summary judgment against each of the claims of Plaintiff SMHG Phase I, LLC ("SMHG'") and in favor of each of Defendants Eisenberg and Roubini's counterclaims, because there is no genuine dispute of material fact and the Defendants are entitled to judgment as a matter of law.

# INTRODUCTION

The gravamen of this matter is a real estate purchase contract (REPC), whereby SMHG promised to sell Eisenberg and Roubini a lot in the Villages at Summit Powder Mountain development for $735,500.

SMHG materially breached the REPC by selling a property to another buyer, rather than selling the lot to Eisenberg and Roubini as required by the contract. Despite not delivering the promised lot, SMHG kept Eisenberg and Roubini's deposits totaling $347,100, and are currently holding these funds from Eisenberg and Roubini.

SMHG is expected to argue that it terminated the contract after Eisenberg and Roubini failed to close by the closing date specified in the REPC. However, SMHG did not serve a valid twenty-day notice of default as required under the REPC to terminate the contract. SMHG has produced a document titled 'Final Notice.' However, this document was not mailed to Eisenberg and Roubini at the correct addresses as required by the REPC. Furthermore, it does not state the correct number of days to cure a default under the REPC. Because SMHG did not serve a twenty-day notice in strict compliance with the notice requirements contained in the REPC, SMHG was not entitled to terminate the contract. Therefore, SMHG was obligated to sell the property to Eisenberg and Roubini. SMHG irreparably breached the contract by selling the lot to another buyer.

Eisenberg and Roubini are entitled to damages caused by SMHG's breach of contract. They are entitled to a refund of deposits totaling $347,100, compensation for the lost expectation value (change in fair market value of the lot) (approximately $215,000), and reimbursement for costs incurred on the building project planned for the lot totaling $249,364.91.

## STATEMENT OF UNDISPUTED FACTS

1. On April 6, 2017, Michael Eisenberg and Nouriel Roubini entered into a Real Estate Purchase Contract ("REPC") with SMHG Phase I, LLC ("SMHG") to purchase Lot #71, Villages at Summit Powder Mountain, Summit Eden Phase 1C Plat, recorded on January 27, 2014 as Document No. 2672945 in the Office of the Weber County Recorder. (Ex. 11, Eisenberg Decl. at ¶ 1.) The REPC is attached as Exhibit 1. (Ex. 11 at ¶ 1.)

2. The contract was drafted by the seller, SMHG. (Ex. 11 at ¶ 1.)

3. The agreed upon purchase price was $735,500. (Ex. 1 at p. 1.)

4. The REPC specifies that an "Earnest Money Deposit" of $147,100 would be paid by Eisenberg and Roubini. The Earnest Money Deposit was to be paid in two parts:

- $36,775 on April 4, 2017; and
- $110,325 on April 26, 2017.[1]

(*See* Ex. 11 at ¶ 4; Ex. 1, REPC at p. 23; and Ex. 2, Fifth Addendum to Real Estate Purchase Contract.)

5. The Earnest Money Deposit was to be held in escrow and released to the Seller "Upon the expiration of the later of the Review Period or the Response Period."[2] (Ex. 1, REPC at

---

[1] Originally the second payment was due on April 14, but this was extended pursuant to the Fifth Addendum to Real Estate Purchase Contract.

[2] "Release of Deposit. Upon the expiration of the later of the Review Period or the Response Period, if applicable, in accordance with Section 6 below, the Deposit shall become nonrefundable and shall immediately be released to Seller for use in development of the Project and the Community, including without limitation, payment of debt service, sales commissions, and development costs. Buyer consents to the release of the Deposit and directs the Title Company to release the Deposit to Seller as provided in this Section 3.6. Buyer shall deliver to Title Company any additional specific acknowledgements or instructions that Title Company may require to release the Deposit as provided in this Section 3.6. The total amount of the

p. 3.6.) The "Review Period" was originally 14 calendar days after the "Contract Date" (*i.e.* April 20, 2017), but was extended until April 26, 2017. (*See* Ex. 1, REPC at p. 6; Ex. 2, Fifth Addendum to Real Estate Purchase Contract.)

      6.      The closing date was August 31, 2017. (Ex. 1, REPC at p. 6.)

      7.      The REPC states the following regarding Buyer Default:

> 4.1. **Buyer Default.** If Buyer fails to timely perform any of its obligations under this REPC, including the deposit of all necessary documents and funds by the Closing Deadline, **Seller may deliver to Buyer a written notice demanding that Buyer comply with the terms of this REPC within twenty (20) calendar days from receipt of notice to Buyer. If at the expiration of such period, Buyer has not complied, then Seller, in Seller's sole and absolute discretion, may elect either to: (i) terminate this REPC and retain the Deposit as liquidated damages without being subject to the dispute resolution procedures contained in Section 5, and thereafter the parties shall be released of all further duties and obligations under this REPC; (ii) obtain specific performance of Buyer's duties and obligations under this REPC; or (iii) pursue any other remedy available at law or in equity.** Notwithstanding the foregoing, if Buyer defaults after depositing earnest money with the Title Company equal to 15% or more of the Purchase Price (exclusive of interest, if any), and Seller elects to terminate this REPC, then Seller will refund to Buyer such portion of the Deposit in excess of the greater of: (i) 15% of the Purchase Price or (ii) Seller's actual damages. Notwithstanding anything to the contrary in this REPC, and specifically, this Section __, the indemnity obligations of Buyer under this REPC are separate and distinct obligations of Buyer that are not subject to the liquidated damage provisions contained in this REPC. Further, notwithstanding anything to the contrary in this REPC, the liquidated damages provisions contained in this REPC will not act to limit the amount of damages recoverable by Seller against Buyer if Buyer improperly, negligently, recklessly or intentionally records a *lis pendens* or other document or instrument that impairs or could impair Seller's ability to sell the Lot to another Buyer.

(Ex. 1, REPC at p. 14 § 4.1 (bolding added).)

---

Deposit, without interest, shall be credited toward payment of the Purchase Price at Closing." (REPC at p. 2.)

8.    The REPC further states:

**LIQUIDATED DAMAGES AND RELEASE OF FUNDS TO SELLER.** BUYER UNDERSTANDS THAT THE LOT IS PART OF A LARGER PROJECT AND THAT AT THE EXECUTION OF THIS REPC, SELLER SHALL REMOVE THE LOT FROM THE LIST OF LOTS BEING OFFERED FOR SALE AND WILL INFORM PROSPECTIVE BUYERS THAT THE LOT IS NO LONGER AVAILABLE FOR SALE BECAUSE OF THE EXECUTION OF THIS REPC. IN SUCH EVENT, SELLER WILL THEREBY BE DEPRIVED OF AN OPPORTUNITY TO SELL THE LOT FROM AND AFTER THE CONTRACT DATE. IT IS THEREFORE AGREED BY THE PARTIES THAT IT IS IMPRACTICAL AND EXTREMELY DIFFICULT TO FIX THE DAMAGES WHICH MAY RESULT FROM ANY FAILURE ON THE PART OF BUYER TO PERFORM ITS OBLIGATION UNDER THIS REPC. ACCORDINGLY, SHOULD BUYER FAIL TO COMPLETE THE PURCHASE OF THE LOT BY REASON OF ANY DEFAULT OF BUYER HEREUNDER, SELLER SHALL BE RELEASED FROM ITS OBLIGATION TO SELL THE LOT TO BUYER AND BY SUBSCRIBING THEIR INITIALS BELOW BUYER AND SELLER AGREE THAT SELLER MAY RETAIN A SUM EQUAL TO THE AMOUNT OF THE DEPOSIT (SUBJECT ONLY TO THE LIMITATIONS OF SECTION 4.1) AS SELLER'S LIQUIDATED DAMAGES AND NOT AS A PENALTY, WHICH AMOUNT SUBSTANTIALLY COMPENSATES SELLER FOR ANY DAMAGES SUSTAINED BY SELLER.

(Ex. 1, REPC at p. 15 § 6.)

9.    The REPC provides the following in regard to delivery of notices:

<u>Notices.</u> All notices or deliveries required by this REPC must be delivered to the address set forth on the signature page to this REPC and: (i) be in writing; (ii) signed by the party giving notice; and (iii) received by the other party or the other party's agent no later than the applicable date referenced in this REPC.

(Ex. 1, REPC at p. 16 § 10.1.)

10.    The addresses provided by Eisenberg and Roubini in the REPC are as follows:

347 Fifth Ave, Suite 800

>New York City, NY 10016
>
>6 East 1st Street, Apt 5A
>New York City, NY 10003

(Ex. 1, REPC at p. 7.)

11. By April 27, 2017, Eisenberg and Roubini had paid the Earnest Money Deposit in the amount of $147,100. (Ex. 11, Eisenberg Decl. at ¶ 11; Ex. 10, Disbursement Register (DEF 000036).) The funds were released to SMHG and its sales broker on April 27, 2021. (*Id.*)

12. The parties to the contract did not complete the transaction by the closing date of August 31, 2017 closing date. (Ex. 11 at ¶ 12.) Instead, on April 6, 2017, the parties to the sale executed the Sixth Addendum to Real Estate Purchase Contract ("Sixth Addendum"), which provided the following:

- The Closing Date was extended until July 31, 2018;
- The Earnest Money Deposit was increased by an additional $200,000, due by May 7, 2018 to be released immediately.

(Ex. 11 at ¶ 12.)

13. The Sixth Addendum is attached herein as Exhibit 3. (Ex. 11 at ¶ 13.)

14. On May 10, 2018, Eisenberg and Roubini wired another $200,000 to the title company. (Ex. 11 at ¶ 14; Ex. 10.) The title company released the funds to SMHG on May 14, 2018. (*Id.*)

15. Sometime after July 31, 2018, SMHG sent a document titled "Final Notice to Perform," which stated, among other things, "SELLER hereby gives Buyer notice to close on the purchase of the Property on or before March 10, 2020 in accordance with the terms of the

Agreement." (Ex. 4.) The "Final Notice" was not emailed to the addresses of Eisenberg and Roubini stated in the REPC. (*Compare* Ex. 4 to Ex. 1 at p. 7.)

16. Per the REPC, notices are required to be sent (mail or email) to the addresses specified in the REPC. (Ex. 1, REPC at p. 16 § 10.1.) The "Final Notice" was *not* sent to the addresses (mail or email) specified in the REPC. (*See* Ex. 4.)

17. Additionally, the "Final Notice" misstates the number of days for the cure period. (*See* Ex. 4.) The notice specified ten days instead of twenty. (*See* Ex. 4.)

18. In approximately June 2020, there were separate discussions with SMHG's agent, Brian Williams ("Williams") and Eisenberg and Eisenberg's business partner David Shusterman ("Shusterman"). (Ex. 11 at ¶ 20; Ex. 12, Shusterman Decl. at ¶ 1.) Eisenberg and Shusterman requested additional time to close the sale. (Ex. 11 at 20; Ex. 12 at ¶ 1.) This request was granted orally by SMHG's agent, Brian Williams. (Ex. 11 at ¶ 20; Ex. 12 at ¶ 1.) SMHG agreed to extend the Closing Date. (Ex. 11 at ¶ 20; Ex. 12 at ¶ 1.) This agreement is mentioned in the following WhatsApp message thread between Williams and Eisenberg:



7

(Ex. 11 at ¶ 20.)

19. On June 18, 2020, Williams sent an Email to Eisenberg stating the following:

> I have sent a couple of WhatsApp messages and have not been over to reach you. We need to close on June 26th with cash per the conversation I had with Mike the day I found out the loan was not approved. We had to reinstate the 10 Day Notice to Perform.
>
> I need to get Brad at GT Title the information for Title so he can circulate closing docs and send over wire instructions for the funds. Please let me know how you would like Title to read and what the mailing address should be for taxes.

(Ex. 11 at ¶ 21; Ex. 5.)

20. The June 18 Email attached as Exhibit 5 was *not* sent to the addresses (mail or email) specified in the REPC. (*Compare* Ex. 5 and Ex. 1 at p. 16 § 10.1.)

21. On approximately June 29-30, 2020, Eisenberg and Roubini wired another $100,000 to the title company, pursuant the parties' agreement to extend the Closing Date. (Ex. 11 at ¶ 23; Ex. 10.)

22. The WhatsApp message included a picture of the wire deposit of $100,000 on June 29. (Ex. 11 at ¶ 24.) In response to the image Williams stated, on July 8, "Checking back in. First deposit received do you have a [*sic*] eta for the remainder." (Ex. 11 at ¶ 24.)

23. On June 24, 2020, Williams wrote to Eisenberg stating, "Hi Mike, the 26th is around the corner, have you guys solved how you plan to close." (Ex. 11 at ¶ 25; Ex. 6.)

24. The total amount currently held by Plaintiff from Eisenberg and Roubini is $347,100. (Ex. 11 at ¶ 27; Ex. 10.)

25. Eisenberg and Roubini spent $249,364.91 on architectural and engineering plans, snow removal, and other costs for the construction planned for the site. (Ex. 11 at ¶ 28.)

26. In approximately September 2021, Eisenberg learned that Lot #71 had been sold to another buyer. (Ex. 11 at ¶ 29.)

27. On January 20, 2022, Zachary C. Myers on behalf of Eisenberg and Roubini Emailed a Second Notice of Default, attached as Exhibit 7, to notices@summitpowder-mountain.com which is the Email address specified for service of notice to SMHG in the REPC. (Ex. 11 at ¶ 30; Ex. 8, Email.) The Second Notice of Default stated the following:

> Michael Eisenberg and Nouriel Roubini, hereby demand that SMHG Phase I, LLC comply with the terms of the Real Estate Purchase Contract (REPC) dated April 6, 2017 (related to the purchase of Lot #71, Villages at Summit Powder Mountain) within twenty (20) calendar days from receipt of this notice (as required by Section 4.2. Seller Default), by tendering the property and completing the sale to Eisenberg and Roubini.
>
> In serving this notice, Eisenberg and Roubini, reserve all rights. This notice should not be considered a waiver of any contractual rights to damages based on SMHG Phase I, LLC's prior acts of repudiation of the contract and intentional/bad faith breach.

(Ex. 11 at ¶ 30; Ex. 7.)

28. SMHG did not tender the lot and complete the sale to Eisenberg and Roubini within 20 days after the Second Notice of Default was Emailed to the address specified in the REPC. (Ex. 11 at ¶ 31.)

29. Because SMHG did not fulfill the contract, Eisenberg and Roubini have lost $347,100 in deposits made towards the purchase of the property, which SMHG has retained. (Ex. 11 at ¶ 33.)

30. Because SMHG did not fulfill the contract, Eisenberg and Roubini have lost the expected increase in value of the property, which is estimated to be approximately $215,000. (Ex. 11 at ¶ 34.)

31. Because SMHG did not fulfill the contract, Eisenberg and Roubini have lost their investment in the building project planned for the lot, which costs total $249,364.91. (Ex. 11 at ¶ 35.)

## STATEMENT OF ADDITIONAL FACTS

1. Plaintiff contributed to the delay in closing by recommending an architect for the lot, who drove up costs and caused delay in the process of obtaining financing for the transaction. (Ex. 11, Eisenberg Decl. at ¶ 15.)

2. SMHG's agents represented that the architect was the preferred architect. (Ex. 11 at ¶ 16.) SMHG also admitted to Eisenberg that anybody who used this architect in tandem with their recommended contractor had problems getting started due to their significant overpricing. (Ex. 11 at ¶ 16.)

## ARGUMENT

I. **SMHG BREACHED THE REPC BY SELLING LOT #71 TO ANOTHER BUYER WITHOUT SERVING A VALID TWENTY-DAY NOTICE TO EISENBERG AND ROUBINI.**

   a. **Per the termination procedure laid out in the REPC, SMHG did not have the right to terminate the contract without first serving a twenty-day notice to cure in compliance with the REPC.**

SMHG will likely argue that Eisenberg and Roubini first breached the Parties' contract by failing to close on the transaction by the closing date. Assuming arguendo that the Parties failed to close by the closing date, SMHG could not terminate the REPC without first serving a valid twenty-day notice of termination (with option to cure).

Eisenberg and Roubini did not materially breach the contract. "Only a material breach will excuse further performance by the non-breaching party. Therefore, '[n]ot every minor

failure justifies nonperformance and rescission of the contract.' 'It must be something so substantial that it could be reasonably deemed to vindicate the other's refusal to perform.'" *Cross v. Olsen*, 2013 UT App 135, ¶ 26, 303 P.3d 1030, 1035 (quotations omitted). Even assuming that Eisenberg and Roubini failed to provide the settlement funds by the date specified in the contract, this was not a *material* breach of the REPC. While the REPC does specify that "timing is of the essence," the REPC also provides the required procedure for the Seller (SMHG) to terminate the contract in case of default by the Buyer (Eisenberg and Roubini), which SMHG did not follow. (*See* Ex. 1, REPC at p. 17 § 10.6 and p. 14 § 4.1.) In order to terminate the contract, the Seller must serve a valid notice providing the Buyer opportunity to cure:

> If Buyer fails to timely perform any of its obligations under this REPC, including the deposit of all necessary documents and funds by the Closing Deadline, **Seller may deliver to Buyer a written notice demanding that Buyer comply with the terms of this REPC within twenty (20) calendar days from receipt of notice to Buyer. If at the expiration of such period, Buyer has not complied,** *then* **Seller, in Seller's sole and absolute discretion, may elect either to: (i) terminate this REPC** and retain the Deposit as liquidated damages without being subject to the dispute resolution procedures contained in Section 5, and thereafter the parties shall be released of all further duties and obligations under this REPC…

(REPC at p. 14 § 4.1 (bolding and italicization added).) This language requires SMHG to deliver a written notice to Eisenberg and Roubini providing twenty days for Eisenberg and Roubini to comply before terminating the REPC. *See id.*

SMHG may argue that it did, in fact, deliver the requisite twenty-day notice to Eisenberg and Roubini on July 31, 2018. However, the 'Final Notice' produced by SMHG does not comply with the REPC and is invalid.

11

Per the REPC, notices are required to be mailed to the addresses specified in the REPC. The 'Final Notice' was not mailed to the addresses specified in the REPC. Therefore, the 'Final Notice' does not satisfy the contractual service requirement.

Additionally, the notice is invalid because it states the incorrect number of days for the cure period: "If you do not close on the purchase of the Property within ten (10) days after delivery of this Final Notice to Perform to you, Seller hereby provides you with notice that Seller will cancel the Agreement and you will have no further rights in respect of the Property." (Ex. 4.) Because the notice specified ten days instead of twenty, it is invalid.

### b. Substantial performance of the notice provision is not sufficient, because Utah law requires strict compliance with the notice procedure before a party's rights can be forfeited under a real estate purchase contract.

Plaintiff may argue that it substantially performed with the notice provision; however, this is not sufficient. Under Utah law, a seller cannot terminate a real estate purchase contract without strict compliance with the contract's notice procedure[3]:

> "**[I]n order to forfeit a purchaser's interest under a uniform real estate contract, the seller must comply strictly with the notice provisions of the**

---

[3] *Thatcher v. Lang*, 2020 UT App 38, ¶ 37, 462 P.3d 397, 406 is also instructive, stating, among other things:

Simply put, this Second Notice does not specify Buyer's alleged breach(es). It contains no specific reference to any particular delinquent principal payment, interest payment, or tax payment. Nor does it explain or describe any amount—much less an overdue amount—that Buyer needed to pay in order to cure. Indeed, the Second Notice notes only that Buyer had "previously received written notice" of his "default and breach" in the First Notice. Buyer, however, cured the breaches listed in the First Notice. Thus, reference to the First Notice did not provide Buyer with specific notice of any subsequent breach(es), and therefore Buyer was not given an opportunity to cure after receiving notice of default (as no specific breach was listed). We therefore conclude that under the plain language of the Contract, the Second Notice did not terminate the Contract or trigger the LD Sentence.

> **contract**. The provisions in the uniform real estate contract are not self-executing, and to enforce them, it requires some affirmative act on the part of the seller to notify the buyer of what specific provision in the contract the seller is proceeding under and state what the buyer must do to bring the contract current." In addition, the Court has disfavored forfeiture where the seller has misled the buyer into thinking that the forfeiture provision will not be strictly enforced.

*Adair v. Bracken*, 745 P.2d 849, 852 (Utah Ct. App. 1987) (quoting *Grow v. Marwick Dev., Inc.*, 621 P.2d 1249, 1251–52 (Utah 1980)) (citing *Lamont v. Evjen*, 29 Utah 2d 266, 508 P.2d 532, 534 (1973) and *Grow v. Marwick Dev., Inc.*, 621 P.2d 1249 (Utah 1980)).

For example, in *Adair*, two buyers entered into a real estate purchase contract with two sellers for an undeveloped mountain lot. "The [buyers] made sporadic payments to respondents for 77 months" and then ceased making payments while still owing $1,024.05 toward the purchase price. *Id.* "Under the forfeiture option in [the contract], the sellers were to be released from their obligation to convey the property, and the buyers were to forfeit their contract payments and improvements as liquidated damages and become tenants-at-will, 'upon failure of the Buyer to remedy default within five days after written notice.'" *Id.* at 852. The sellers sent a letter notifying the buyers that they were in default, demanding acceleration of the contract balance, and requesting "Please respond within five days of the above date." *Id.* at 850. The Court found that "the notice provided to appellants was insufficient as a matter of law to terminate their contractual rights," because although the "letter notified appellants of the contractual remedy the sellers intended to invoke if the default was not cured, it fatally omitted the amount the sellers were demanding, including principal, accrued interest and back taxes." *Id.* at 852.

Here, as in *Adair*, the 'Final Notice' did not strictly comply with the notice provisions of the contract; therefore, SMHG was not entitled to terminate the contract and forfeit Eisenberg

13

and Roubini's purchase rights. Critically, the notice was served to the wrong address for Eisenberg and was not sent to *any* address for Roubini. There was no attempt to notify Roubini that his contract rights were under threat of termination. Therefore, the 'Final Notice' is invalid.

### c. Even if the notice was valid, SMHG agreed to extend the closing date after serving the notice; thereby waiving the right to terminate the REPC.

Even if the notice was proper, SMHG was not entitled to terminate the contract because it agreed to extend the closing date in exchange for an additional Earnest Money Deposit.

Eisenberg and Shusterman, on behalf of Eisenberg and Roubini, requested additional time to close the sale. This request was granted orally by SMHG's agent, Brian Williams. Then, text messages between Eisenberg and SMHG's agent, Williams, memorialized the fact that that the closing date was extended until, at least, June 26, 2020. Williams wrote an Email to Eisenberg dated June 18, 2020, stating, "We need to close on June 26th with cash per the conversation I had with Mike the day I found out the loan was not approved." (Ex. 5.) On June 24, 2020, Williams wrote to Eisenberg stating: "Hi Mike, the 26th is around the corner, have you guys solved how you plan to close." (Ex. 6.) Therefore, there was an agreement—memorialized in writing via Email and text—to extend the closing date until, at a least, June 26, 2020. This satisfies the contractual requirement that all changes, extensions, and waivers be in writing.

Furthermore, in the June 18, 2020 Email, Williams acknowledges that the first default notice was not effective stating, "We had to reinstate the 10-day notice to perform." (Ex. 5.)

Eisenberg and Roubini did not close on June 26, 2020. However, SMHG did not serve a twenty-day notice of default any time after this date. Therefore, SMHG was not entitled to terminate the REPC and was still obligated to sell Lot #17 to Eisenberg and Roubini.

SMHG materially breached the Parties agreement by selling the property to another buyer; thereby making performance of the contract impossible.

## II.  SMHG MAY ARGUE THAT THE REPC GAVE IT THE RIGHT TO SELL THE PROPERTY AFTER EISENBERG AND ROUBINI DEFAULTED.

SMHG will likely argue that it had the right to sell the property to another buyer after Eisenberg and Roubini defaulted.

SMHG may argue that the notice procedure described in section 4.1 is permissive rather than mandatory, because it states, "Seller *may* deliver to Buyer a written notice…" (REPC at p. 14.) However, this argument is unavailing, because while the word "may" is permissive, SMHG's right to terminate the REPC after the buyer's default is conditioned on service of the twenty-day notice. Therefore, even if the right to terminate the contract after serving a twenty-day notice is "optional," in the sense that the seller does not need to exercise this right and may choose to forbear termination of the REPC, it is still the necessary process to terminate the Buyer's rights under the contract.

Likewise, the Liquidated Damages clause in the contract does not excuse the notice requirement of section 4.1. While the clause does state, "SHOULD BUYER FAIL TO COMPLETE THE PURCHASE OF THE LOT BY REASON OF ANY DEFAULT OF BUYER HEREUNDER, SELLER SHALL BE RELEASED FROM ITS OBLIGATION TO SELL THE LOT TO BUYER," it also expressly conditions this remedy on "THE LIMITATIONS OF SECTION 4.1," which requires service of a twenty-day notice. (REPC at p. 15 § 6.) Therefore, per the Liquidated Damages clause, both termination and liquidated damages require a properly served twenty-day notice. Additionally, the structure of the REPC suggests that termination and liquidated damages are conditioned upon proper service of the twenty-day notice. *See, e.g.*

15

*Thatcher v. Lang*, 2020 UT App 38, ¶ 32, 462 P.3d 397, 405 ("Properly harmonizing the Termination Sentence and [Liquidated Damages] Sentence shows that the parties' intended purpose of the first is to operate as a prerequisite for the second."). Therefore, SMHG was not entitled to terminate the contract without first serving the twenty-day notice per section 4.1.

### III. EISENBERG AND ROUBINI ARE ENTITLED TO DAMAGES FOR THE COST OF ARCHITECTURAL AND ENGINEERING PLANS AND EXPECTATION DAMAGES FOR THE INCREASED VALUE OF THE PROPERTY.

Because SMHG materially breached the contract, Eisenberg and Roubini are entitled to reimbursement for the cost of architectural and engineering plans incurred in reliance on SMHG's performance under the contract.

"As a general rule, legal damages serve the important purpose of compensating an injured party for actual injury sustained, so that she may be restored, as nearly as possible, to the position she was in prior to the injury." *Mahmood v. Ross*, 1999 UT 104, ¶ 19, 990 P.2d 933, 937 (quoting *Castillo v. Atlanta Cas. Co.*, 939 P.2d 1204, 1209 (Utah Ct.App.1997) (citing 25 C.J.S. Damages §§ 1, 3 (1966)).

Here, the expenses incurred to procure architectural and engineering plans in preparation to build a residence on the lot were foreseeable. The REPC includes provisions related to architectural design criteria for the homeowners association. Furthermore, SMHG referred Eisenberg and Roubini to the architect. Therefore, SMHG knew and should have foreseen these costs would likely be incurred by Eisenberg and Roubini in reliance on the contract.

Furthermore, to restore Eisenberg and Roubini to their position but for the breach, SMHG must pay them an amount sufficient to compensate them for the increased value of the property—which compensation will be necessary in order for Eisenberg and Roubini to obtain a

reasonably equivalent replacement property. The price of lots have gone up significantly in the area. The difference in price for a replacement property is approximately $215,000.

| DAMAGES CATEGORY | AMOUNT |
|---|---|
| Deposits | $347,100 |
| Expenses incurred in reliance on contract | $249,364.91 |
| Difference in Value for Reasonable Replacement Property (change in fair market value) | $215,000 |

IV.  **THE CONSEQUENTIAL DAMAGES CLAUSE IN THE REPC DOES NOT FORECLOSE ANY DAMAGES CLAIMED BY EISENBERG AND ROUBINI, BECAUSE SMHG INTENTIONALLY BREACHED THE CONTRACT.**

The REPC states, "IN NO EVENT WILL SELLER BE LIABLE FOR CONSEQUENTIAL DAMAGES OR DAMAGES BASED UPON ANY INCREASED VALUE OF THE LOT. BUYER HEREBY RELEASES AND WAIVES ANY CLAIMS FOR SUCH DAMAGES." (REPC at p. 14 § 4.2.)

First, the damages for architectural fees and other costs related to the property are direct damages, not consequential damages. "Typically, there are two types of damages a non-breaching party can recover in an action for breach of contract: "general damages, which flow naturally from the breach, and consequential damages, which, while not an invariable result of breach, were reasonably foreseeable by the parties at the time the contract was entered into." *Mahmood v. Ross*, 1999 UT 104, ¶ 19, 990 P.2d 933, 937 (quoting *Castillo v. Atlanta Cas. Co.*, 939 P.2d 1204, 1209 (Utah Ct.App.1997) (citing 25 C.J.S. Damages §§ 1, 3 (1966)). Here, the architectural fees and snow removal costs flow naturally from the breach. These costs were an *invariable* result of the breach. Any expenses incurred in anticipation of developing the property

would invariably be lost if the contract was not fulfilled. Therefore, these damages are compensable direct damages, not consequential damages.

Second, the limitation on consequential damages does not apply, because SMHG intentionally breached the contract. Interpreting a real estate purchase contract containing an exclusive remedy clause that would exclude the buyer's consequential damages, the United States District Court for the District of Utah found that the exclusive damages clause was conditioned upon the implied covenant of good faith and fair dealing. *See Goodwin v. Hole No. 4, LLC*, Order Granting in Part and Denying in Part Hole No. 4's Motion to Dismiss, Denying Prudential's Motion to Dismiss, and Denying Prudential's Motion for a More Definite Statement, pp. 6-9, U.S. District Court, District of Utah, Case No. 2:06-cv-00679-PGC (11/15/06) (attached as Exhibit 9). The covenant of good faith and fair dealing prevents a real estate seller from *intentionally* breach a contract and then relying on the contract to limit the damages. *See id.* The Court explained that in order to preserve the "overall purpose" of the contract, the exclusive remedy clause must only apply to "unintentional defaults," otherwise the seller could breach at will (without consequence), making the promise to sell "illusory." *Id.* at pp. 7-8.

Here, SMHG intentionally breached the contract by selling it to third party and keeping Eisenberg and Roubini's money. This was not an unintentional or accidental default. Therefore, SMHG cannot rely on the clause purporting to exclude consequential damages. *See id.* Eisenberg and Roubini are entitled to all damages flowing from the breach, including damages for architectural fees and other costs and damages based on the increased value of the property.

## V.  ROUBINI HAS NOT TRANSFERRED HIS RIGHTS UNDER THE REPC TO SHUSTERMAN.

Eisenberg and Roubini have not "assign[ed], transfer[red] or convey[ed their] rights and/or obligations under this REPC"; therefore, they have not violated the "No Transfer" provision of the REPC. (*See* Ex. 11 at ¶ 36; Ex. 12 at ¶ 2; REPC at p. 17 § 10.10.)

## CONCLUSION

SMHG intentionally breached the REPC with Eisenberg and Roubini. SMHG gave the property to another party without providing proper notice to Eisenberg and Roubini, in violation of the contract. Therefore, SMHG is liable for Eisenberg and Roubini's damages.

The Court may consider entering an order as to liability and reserving the computation of damages for a separate evidentiary hearing.

DATED June 27, 2022.

                                          CHRISTENSEN & JENSEN, P.C.

                                          */s/ Zachary C. Myers*
                                          Todd D. Weiler
                                          Zachary C. Myers
                                          *Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on June 27, 2022, I caused a true and correct copy of the foregoing **MOTION FOR SUMMARY JUDGMENT (TOTAL OR PARTIAL)** to be served via an electronic filing service on the following:

H. Burt Ringwood
bringwood@strongandhanni.com
Spencer W. Young
syoung@strongandhanni.com
STRONG & HANNI
102 South 200 East, Suite 800
Salt Lake City, UT 84111
*Attorneys for Plaintiff, SMHG Phase I, LLC*

/s/ Zachary C. Myers