**THE UNITED STATES DISTRICT COURT**

**DISTRICT OF UTAH**

| | |
|---|---|
| **SMHG PHASE I, LLC, a Delaware Limited Liability Company,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**MICHAEL EISENBERG, a New York Citizen; NOURIEL ROUBINI; a New York Citizen; and DAVID SHUSTERMAN, a New York Citizen,**<br><br>**Defendants,**<br><br>**MICHAEL EISENBERG, a New York Citizen; NOURIEL ROUBINI; a New York Citizen,**<br><br>**Third-Party Plaintiffs,**<br><br>**BRIAN WILLIAMS; and CHATEAUX REALTY, LLCS,**<br><br>**Third-Party Defendants.** | **REPORT AND RECOMMENDATION**<br><br>**(AMENDED)**<br><br>**Case No. 1:22-cv-00035-DBB-JCB**<br><br>**District Judge David Barlow**<br><br>**Magistrate Judge Jared C. Bennett** |

District Judge David Barlow referred three motions to Magistrate Judge Jared C. Bennett under 28 U.S.C. § 636(b)(1)(B):[1] (1) Plaintiff SMHG Phase I, LLC's ("SMHG") "Motion to Dismiss Defendants' Amended Counterclaim";[2] (2) Brian Williams ("Mr. Williams"), GT Title Services, Inc. ("GT Title"), and K2 Realty, LLC's ("K2 Realty") (collectively, "Third Party

[1] ECF No. 131, 132.

[2] ECF No. 91.

Defendants") "Motion to Dismiss Third-Party Complaint for Failure of Timely Service";[3] and (3) Defendants Michael Eisenberg, Nouriel Roubini, and David Shusterman's (collectively, "Defendants") "Third Motion for Leave to File Amended Pleadings."[4]

As discussed below, the court recommends dismissing Defendants' fraudulent inducement claim against SMHG[5] and denying them leave to file fraudulent non-disclosure claims against SMHG[6] because of the economic loss rule. Separately, the court recommends denying Third-Party Defendants' motion to dismiss for insufficient service[7] because: as to GT Title and K2 Realty, the motion is moot; and as to Mr. Williams, a permissive extension of time for service is warranted even though Defendants have not demonstrated good cause for untimely service.

## Background

Plaintiff SMHG initiated this action in state court, and Defendants timely removed it to this court.[8] Defendants answered the complaint ("Answer")[9] and asserted counterclaims against SMHG ("Counterclaim").[10]

---

[3] ECF No. 107.

[4] ECF No. 108.

[5] ECF No. 91.

[6] ECF No. 108.

[7] ECF No. 107.

[8] ECF No. 2-1.

[9] ECF No. 6 at 1-21.

[10] *Id.* at 21-33.

Over a year later, Defendants moved to amend their Counterclaim and sought leave to file a new complaint against third parties ("Third-Party Complaint").[11] The claims in the proposed Third-Party Complaint included: (1) fraudulent nondisclosure, (2) civil conspiracy—conversion and breach of contract, and, in the alternative, and (3) fraudulent inducement.[12] The fraud claims related to misrepresentations Mr. Williams allegedly made to Defendants about SMHG's intention to build mixed-use villages and a "Main Street" proximate to the lot Defendants purchased from SMHG ("Lot #71").[13] Defendants alleged that these misrepresentations fraudulently induced Defendants to sign the Real Estate Purchase Contract ("REPC") on April 6, 2017.[14]

The court initially denied Defendants leave to add a counterclaim of fraudulent inducement against SMHG for failure to allege fraud with the requisite particularity under Fed. R. Civ. P. 9.[15] However, the court concluded that Defendants could file and serve their Third-Party Complaint.[16]

Shortly thereafter, Defendants filed a second motion for leave to amend their Counterclaim against SMHG.[17] The proposed amendment cured the Rule 9 pleading defects present in the first proposed amended counterclaim. Applying the liberal standard under Rule 15,

---

[11] ECF No. 73.

[12] ECF No. 73-1 at 47-49.

[13] *Id.* at 24-26, 34-37.

[14] *Id.* at 36-38.

[15] ECF No. 80 at 5-9.

[16] *Id.* at 9-13.

[17] ECF No. 84.

the court permitted Defendants to add a counterclaim of fraudulent inducement against SMHG ("Amended Counterclaim").[18]

Soon after, SMHG moved to dismiss the Amended Counterclaim under the economic loss rule.[19] Additionally, Third-Party Defendants filed a motion to dismiss the Third-Party Complaint under Fed. R. Civ. P. 12(b)(5) because instead of serving Third-Party Defendants within 90 days of filing the Third-Party Complaint—as required under Fed. R. Civ. P. 4(m)—Defendants did not serve: (1) K2 Realty until 143 days after filing, (2) GT Title until 150 days after filing, and (3) Mr. Williams until 152 days after filing.[20]

While awaiting a decision on both motions to dismiss, Defendants filed a third motion for leave to amend[21] seeking to: (1) strike claims against Third-Party Defendants K2 Realty and GT Title; (2) supplement their allegations in their Answer, Amended Counterclaim, and Third-Party Complaint with new information learned at depositions in November 2023; (3) include a claim of fraudulent non-disclosure both as a new counterclaim against SMHG and as a new claim against Third-Party Defendants; and (4) add an affirmative defense to Defendants' Answer.[22] Defendants argue that these proposed amendments are timely because two November 2023 depositions provided additional details about representations SMHG made to Defendant Mr. Roubini[23] and revealed information about how one of SMHG's biggest investor groups (known as the "EB-5

---

[18] ECF No. 88.

[19] ECF No. 91.

[20] ECF No. 107.

[21] ECF No. 108.

[22] *Id.* at 2.

[23] *Id.*

investors") had missed construction progress payments as of April 2017.[24] Defendants contend that SMHG's omission of this information caused Defendants to fraudulently enter the REPC.[25]

## LEGAL STANDARDS

### I. Rule 12(b)(6) Motion to Dismiss

"To survive a motion to dismiss [under Fed. R. Civ. P. 12(b)(6)], a [pleading] must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[26] A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[27] Courts "accept the well-pleaded facts alleged as true and view them in the light most favorable to the plaintiff."[28] But courts should not accept "threadbare recitals of a cause of action's elements, supported by mere conclusory statements."[29] After disregarding such statements, courts "look to the remaining factual allegations to see whether [the plaintiff] ha[s] stated a plausible claim."[30]

---

[24] *Id.*

[25] ECF No. 108-1 at 38-39.

[26] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[27] *Id.*

[28] *Matney v. Barrick Gold of N. Am.*, 80 F.4th 1136, 1144 (10th Cir. 2023) (citation omitted).

[29] *Iqbal*, 556 U.S. at 663.

[30] *Brooks v. Mentor Worldwide LLC*, 985 F.3d 1272, 1281 (10th Cir. 2021).

## II. Rule 12(b)(5) Motion to Dismiss

Under Fed. R. Civ. P. 12(b)(5), a defendant "may object to a plaintiff's failure to comply with the procedural requirements for proper service set forth in or incorporated by Rule 4."[31] "A Rule 12(b)(5) motion . . . challenges the mode or lack of delivery of a summons and complaint."[32] A motion brought under Rule 12(b)(5) "differ[s] from the other motions permitted by Rule 12(b) somewhat in that [it] offer[s] the district court a course of action—quashing the process without dismissing the action—other than simply dismissing the case when the defendant's defense or objection is sustained."[33]

Rule 4(m) requires a party to serve a complaint within 90 days.[34] The rule provides that "if a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time."[35] However, "if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period."[36] "Even "[i]f the plaintiff fails to show good cause, the district court must still consider

[31] *Richardson v. Alliance Tire & Rubber Co.*, 158 F.R.D. 475, 477 (D. Kan. 1994) (quoting 5A Charles A. Wright & Arthur R. Miller, *Fed. Prac. & Proc. Civ.* § 1353 (2d ed. 1990)).

[32] *Williams v. Pub. Serv. Co. of N.M.*, No. CIV-05-0660JBLAM, 2005 WL 3662906, at * 2 (D.N.M. Nov. 7, 2005) (quotation and citation omitted).

[33] *Id.* (quoting 5B Charles A. Wright & Arthur R. Miller, *Fed. Prac. & Proc. Civ.* § 1354 (3d ed. 2004)).

[34] Fed. R. Civ. P. 4(m).

[35] *Id.*

[36] *Id.*

whether a permissive extension of time may be warranted."[37] "The burden of establishing validity of service is on the plaintiff."[38]

### III. Rule 15 Motion to Amend

Fed. R. Civ. P. 15(a) provides for liberal amendment of pleadings. Rule 15 instructs that "court[s] should freely give leave" to amend "when justice so requires."[39] Under Rule 15, "[r]efusing leave to amend is generally only justified upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment."[40] "A proposed amendment is futile if the [pleading], as amended, would be subject to dismissal" under Rule 12(b)(6), the standard for which is recited above.[41]

## ANALYSIS

The court's analysis is provided in two parts. First, regarding both SMHG's motion to dismiss Defendants' fraud counterclaims under Rule 12(b)(6) and Defendants' motion to amend their pleadings under Rule 15, the court recommends dismissal and denial of leave to amend respectively because the economic loss rule bars Defendants' fraud claims. Second, as to the motion regarding service of process, the court recommends denying it as to GT Title and K2 Realty because the motion is now moot; but as to Mr. Williams, the court also recommends

---

37 *Espinoza v. United States*, 52 F.3d 838, 841 (10th Cir. 1995).

38 *Golden v. Mentor Capital, Inc.*, No. 2:15-CV-00176-JNP-BCW, 2017 WL 3379106, at *1 (D. Utah Aug. 3, 2017).

39 Fed. R. Civ. P. 15(a)(2).

40 *Bylin v. Billings*, 568 F.3d 1224, 1229 (10th Cir. 2009) (quotations and citation omitted).

41 *Bradley v. Val-Mejias*, 379 F.3d 892, 901 (10th Cir. 2004) (quotations and citations omitted).

denial because a permissive extension of time is warranted. Each issue is addressed in order below.

## I. The Economic Loss Rule Warrants Dismissing Defendants' Fraudulent Inducement Claim and Renders Futile the Proposed Amended Claim of Fraudulent Non-disclosure.

Utah's economic loss rule warrants dismissing Defendants' claim of fraudulent inducement and precluding Defendants from amending their pleadings anew to add a fraudulent non-disclosure claim. Where, as here, "federal courts are called upon to interpret state law, the federal court must look to rulings of the highest state court, and, if no such rulings exist, must endeavor to predict how that high court would rule."[42] Here, the Utah Supreme Court has held that the economic loss rule applies to bar a fraudulent inducement claim when the tort claim is a mere duplication of the party's contract claim.[43] In other words,

> [t]he economic loss rule marks the fundamental boundary between contract law and tort law. Generally speaking, the economic loss rule prevents the recovery of purely economic damages under a tort theory when a contract covers the subject matter of the dispute. Therefore, when a conflict arises between parties to a contract regarding the subject matter of that contract, the contractual relationship controls, and parties are not permitted to assert actions in tort in an attempt to circumvent the bargain they agreed upon.[44]

Thus, the operative question under Utah law is "whether the contract covers the subject of the tort claims—or in other words whether the basis for the [party's] tort claims is distinct and

---

[42] *Amparan v. Lake Powell Car Rental Cos.*, 882 F.3d 943, 947 (10th Cir. 2018).

[43] *HealthBanc Int'l, LLC v. Synergy Worldwide, Inc.*, 435 P.3d 193, 196 (Utah 2018).

[44] *Ennis v. Alder Prot. Holdings, LLC*, No. 2:19-CV-00512, 2021 WL 409785, at *7 (D. Utah. Feb. 5, 2021) (internal citations and quotations omitted).

separable from the basis for the contract claims."[45] "[W]hen [the] conflict [that] arises between parties to a contract [is] regarding the subject matter of that contract . . . the contractual relationship controls, and parties are not permitted to assert actions in tort."[46] Thus, when "alleged fraudulent inducement overlaps completely with a claim for breach of contract" the economic loss rule bars the tort claim.[47]

Because a contract exists between the parties in this action, the court first considers below the misrepresentations that allegedly create a duty independent of the REPC. Thereafter, the court reviews the REPC's provisions. Finally, the court compares the alleged misrepresentations with the duties established under the REPC and determines that the misrepresentations or non-disclosures completely overlap with the duties therein, which invokes the economic loss rule and bars Defendants' fraud claims.

A. The Alleged Misrepresentations

As to the representations that induced Defendants' assent to the REPC, Defendants allege that Mr. Williams, as SMHG's agent, misrepresented to Defendants that the Villages at Summit Powder Mountain, where Lot #71 was located, was intended to include mixed-use villages and a

[45] *HealthBanc*, 435 P.3d at 196.

[46] *Id.* at 197 (internal quotations omitted); *see also Preventive Energy Solutions, L.L.C. v. nCap Ventures 5, L.L.C.*, No. 21-4099, 2023 WL 7148434, at *10 (10th Cir. 2023) (stating that under Utah law, the language in the contract need not literally cover the statements underlying the fraud claims, so long as the contract language covers the same subject matter as the alleged representations).

[47] *HealthBanc*, 435 P.3d at 196.

"Main Street" and associated amenities.[48] The prospect of owning a lot whose value would be enhanced by amenities such as a bustling Main Street induced Defendants to purchase Lot #71.

As to the information that was not disclosed, Defendants allege that, at the time Mr. Williams made the above-mentioned representations about a "Main Street," SMHG failed to disclose that it did not have the means to build Main Street due to a lack of investor payments, was behind schedule in constructing it, and did not intend to complete the project.[49] Defendants contend that, had they possessed this non-disclosed information, they would not have entered into the REPC.

B. The REPC's Provisions

Considering the REPC in the context of a motion to dismiss is appropriate here because it is central to the operative complaint and its proposed amendments, and no party disputes its authenticity.[50] In the REPC, Defendants agreed that SMHG had made "no representations or warranties, express or implied, regarding construction of any of the Project & Community

[48] ECF No. 90 at 24.

[49] ECF No. 108-1 at 38-39.

[50] When evaluating a motion to dismiss, "[i]n addition to the complaint, the district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2022). Thus, the court may properly consider the REPC without transforming the motion to dismiss into a motion for summary judgment. *See, e.g.*, *Apodaca v. Young America Ins. Co.*, No. 18-CV-0399, 2023 WL 7706283, at *18 (D.N.M. Nov. 15, 2023) ("Because [Plaintiff] refers to her insurance policy in her [Second Amended Complaint], because the insurance policy is 'central' to her claims, and because she 'do[es] not dispute the document['s] authenticity,' the Court properly may consider it when deciding [Defendant's] Third [Motion to Dismiss] without converting the [motion to dismiss] to a motion for summary judgment.").

Improvements, except as otherwise expressly provided in this REPC . . . ."[51] In signing the REPC, Defendants acknowledged that they "had not relied on any . . . warranties, or other information, written or oral, regarding . . . the Project, or the Community, including . . . the services to be provided to Buyer . . . or any other data except as specifically set forth the Seller's Disclosure Documents and the Property Report or as otherwise specifically set forth in this REPC."[52] "Project and Community Improvements" was a term defined in the REPC to mean "any proposed amenities or common services of any kind located or to be located within the Project and/or the Community."[53] "Project" was defined as "the Villages at Summit Powder Mountain" and "Community" was defined as "Summit Powder Mountain."[54]

Additionally, the REPC expressly governed the type and extent of disclosures that SMHG was required to make to Defendants. The parties agreed that, within five business days after the contract date, SMHG would deliver to Defendants copies of documents such as a preliminary title report, SMHG's property condition disclosure (land), plat, and neighborhood bylaws.[55] The parties agreed that SMHG was not required to provide additional disclosures to Defendants.[56]

C. The Alleged Misrepresentations Completely Overlap with the Terms of the REPC

The REPC's provisions completely overlap with subject matter of the alleged misrepresentations and non-disclosures about SMHG's ability to build a "Main Street" proximate

---

[51] ECF No. 2-1 at 27, § 3.20.

[52] *Id.*

[53] *Id.* at 23, § 1.1.

[54] *Id.* at 15, ¶ 2.

[55] *Id.* at 18, § 6.3.

[56] *Id.*

to Lot #71. As to the fraudulent inducement claim, Defendants negotiated their remedy in the REPC regarding SMHG's representations about construction of community improvements within the Villages at Summit Powder Mountain, including the construction of a "Main Street," by agreeing that no such representations were made. If Defendants can sign a contract that affirmatively declares that their real estate purchase is not contingent upon representations about amenities that may be constructed in the future and then bring a tort claim for not having their amenity expectations met, then Defendants are using a tort to create a better contract than they originally negotiated. That is precisely what the economic loss rule is supposed to prevent.[57] Therefore, the economic loss rule bars Defendants' fraudulent inducement claim.

Defendants' proposed fraudulent non-disclosure claim fares no better under the economic loss rule. The REPC expressly covers SMHG's disclosure obligations. Conspicuously absent from the REPC's provisions is a duty to disclose SMHG's financial fitness or to disclose the financial feasibility of constructing amenities that Defendants expressly agreed were not an inducement to enter the REPC in the first place. Once again, where, as here, Defendants seek to add to a contract more fulsome disclosure provisions through a tort claim than what Defendants negotiated in the contract itself, the economic loss rule intervenes and bars the tort claim.[58] Given Defendants' proposed fraudulent non-disclosure claims would be subject to dismissal under the economic loss rule, the court recommends denying them as futile under Rule 15.

---

[57] *HealthBanc*, 435 P.3d at 198 ("[I]t seems problematic for a court to make a better contract for [the parties] than the one they negotiated—by importing tort remedies into the deal.").

[58] *Id.*

Despite the REPC's clear coverage of the bases for their fraud claims, Defendants contend that the economic loss rule does not apply to "pre-contract activity."[59] That is an incorrect statement of Utah law. Indeed, the Utah Supreme Court's decision in *HealthBanc* specifically considered whether a fraudulent inducement claim stemming from pre-contract activity was barred under the economic loss rule.[60] The *HealthBanc* court then engaged in a thorough discussion about why fraudulent inducement claims that are predicated on pre-contract representations—which, by definition, is what fraudulent inducement means—are barred when the contract covers the very subject matter that is the basis for the fraudulent inducement claim.[61] And, as shown above, because the REPC covers the very bases for Defendants' "pre-contract activity" fraudulent inducement and non-disclosure claims, the economic loss rule bars them. Therefore, the court should dismiss the fraud claims in the Amended Counterclaim and deny the proposed amendment thereto as futile.

## II. The Court Recommends Denying Third-Party Defendants' Motion to Dismiss Third-Party Complaint for Failure of Timely Service.

The court recommends denying as moot Third-Party Defendants' motion to dismiss for insufficient service[62] as to GT Title and K2 Realty because the parties have agreed to remove these parties as Third-Party Defendants.[63] Therefore, no further analysis is necessary for them.

---

[59] ECF No. 100 at 4.

[60] 435 P.3d at 195 (stating that plaintiff's fraudulent inducement claim was based on defendant's pre-contract representations that it was "the sole and exclusive owner" of a product formula and "all associated intellectual property rights").

[61] *Id.* at 196-198 (starting at ¶14 ending at end of ¶21).

[62] ECF No. 107.

[63] ECF No. 118 at 2. Defendants voluntarily dismissed K2 Realty on January 19, 2024. ECF No. 122.

As to Mr. Williams, however, the court recommends denying the motion to dismiss because, despite Defendants' failure to comply with the 90-day service deadline, a permissive extension of time is warranted. Fed. R. Civ. P. 12(b)(5) allows a party to move to dismiss for insufficient service while Fed. R. Civ. P. 4(m) allows a court to dismiss an action "[i]f a defendant is not served within 90 days after the complaint is filed." However, the court may extend the service period if the plaintiff shows good cause for the failure to timely serve. To guide the court's discretion on this matter, the Court of Appeals for the Tenth Circuit has created a two-prong test to evaluate Rule 12(b)(5) dismissals relying on Rule 4(m):

> The preliminary inquiry to be made under Rule 4(m) is whether the plaintiff has shown good cause for the failure to timely effect service . . . If good cause is shown, the plaintiff is entitled to a mandatory extension of time. If the plaintiff fails to show good cause, the district court must still consider whether a permissive extension of time may be warranted. At that point the district court may in its discretion either dismiss the case without prejudice or extend the time for service.[64]

As to the first prong, Defendants have not shown good cause for failing to serve Mr. Williams within the 90-day limit. Their only explanation is that serving Mr. Williams a "mere 31 days after the 90-day deadline" constitutes reasonable care on Defendants' part.[65] The court disagrees because merely admitting to violating the Rule 4(m) deadline does not provide good cause for *why* the deadline was missed.[66]

However, as to the second prong, the court finds that Defendants' failure to timely serve Mr. Williams does not justify dismissal of the claims against Mr. Williams and finds that a

---

[64] *Espinoza v. United States*, 52 F.3d 838, 841 (10th Cir. 1995).

[65] ECF No. 117 at 3.

[66] In fact, service occurred 62 days after the 90-day deadline, not 31.

permissive extension of time is warranted. "The factors to be considered in determining whether to grant a permissive extension include: (1) potential barring of claims under a statute of limitation, (2) prejudice to the defendant, (3) whether the defendant had notice, (4) the likelihood of eventual service, (5) whether the plaintiff is represented by counsel, and (6) the length of the delay."[67] As discussed summarily below, on balance, these factors favor an extension instead of dismissal.

On the one hand, two factors favor dismissal. First, the court concludes that the four-year statute of limitations[68] for Defendants' remaining claim of "civil conspiracy—conversion and breach of contract" against Mr. Williams[69] would not bar the refiling of the Third-Party Complaint against Mr. Williams. Further, Defendants are represented by counsel, who is aware of Rule 4(m)'s service requirements.

On the other hand, the remaining factors weigh in favor of a permissive extension. Mr. Williams has been on notice of this lawsuit since at least August 2022, when Mr. Williams provided SMHG with affidavits in support of their opposition to Defendants' motion for summary judgment[70] and in support of SMHG's competing motion for partial summary judgment.[71] Additionally, there is no indication that Mr. Williams suffered any prejudice as a result from the delay in service. Although Mr. Williams argues that granting a permissive

---

[67] *Golden v. Mentor Capital, Inc.*, No. 2:15-CV-00176-JNP-BCW, 2017 WL 3379106, at *3 (D. Utah Aug. 3, 2017).

[68] Utah Code Ann. § 78B-2-307(4).

[69] ECF No. 90 at 48-49.

[70] ECF No. 18-2.

[71] ECF No. 19-2.

extension will preclude him from conducting discovery on the Third-Party Complaint because fact discovery closed on December 20, 2023,[72] he may file a motion to briefly reopen discovery pursuant to Fed. R. Civ. P. 16(b)(4) in which he can explain his need for discovery he was unable to obtain due to the delay in serving him in this action. Finally, given the aforementioned factors and given that trial has not been scheduled, the court recommends granting a permissive extension of time for service up to and including the date that Mr. Williams was served on November 5, 2023. Accordingly, the court recommends denying Mr. Williams's motion to dismiss for insufficient service.[73]

---

[72] ECF No. 107 at 4-5.

[73] ECF No. 107.

## CONCLUSION AND RECOMMENDATION

Based upon the forgoing analysis, the court HEREBY RECOMMENDS:

1. GRANTING SMHG's Motion to Dismiss Defendants' Amended Counterclaim.[74]
2. DENYING Defendants' Third Motion for Leave to File Amended Pleadings,[75] and
3. DENYING Third-Party Defendants' Motion to Dismiss Third-Party Complaint for Failure of Timely Service.[76]

Copies of this Report and Recommendation are being sent to all parties, who are hereby notified of their right to object.[77] The parties must file any objections to this Report and Recommendation within fourteen days after being served with a copy of it.[78] Failure to object may constitute waiver of objections upon subsequent review.

IT IS SO ORDERED.

DATED this 15th day of March 2024.

BY THE COURT:

JARED C. BENNETT
United States Magistrate Judge

---

[74] ECF No. 91.

[75] ECF No. 108.

[76] ECF No. 107.

[77] 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2).

[78] 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2).